William Mertens, J.
By stipulation of the parties, the specific issue raised by the defendant Hertz’ affirmative defense denying operation and control of the truck admittedly owned by it was tried by the court without a jury. All other issues as to liability and injuries were reserved for further disposition.
The Hertz truck was rented to Stillwater Trucking Corp. by Hertz on October 18,1966 and was to be returned by October 28, 1966. The rental agreement document is apparently the standard form used by Hertz for transient rentals and is in evidence as defendant’s Exhibit C. Apparently the truck was to be garaged at Hertz’ garage each night. On the night of October 18, 1966 the truck was involved in an accident with plaintiff. The truck at the time was being driven by Angelo Marino, owner of a gas station, who was not an employee of the lessee, Still-water, but was driving the truck back to the Hertz garage at the request and with the permission of the lessee.
The Hertz affirmative defense of a denial of operation and control of the vehicle, i.e., of a lack of its permission to operate the vehicle, rests upon the contention that in permitting Marino *795 to drive the truck its lessee (Stillwater) violated alleged conditions of the rental agreement which forbid operation of the vehicle by one who is not an employee of the lessee and that therefore Hertz should not be held to have given its permission to Marino to drive the truck. Marino was not an employee of the lessee but was driving the truck “asa favor ” to the lessee.
The conditions relied upon by Hertz are found on what is actually the back of the rental agreement although the print rather deceitfully designates it as “page 1 ” (see Exhibit C). .The entire back side of the rental document is filled with ‘ ‘ terms and conditions ” which are so extensive, so compactly printed and in such very small type as almost to defy readability. There is a reference to such terms and conditions on the other side of the document where the date, rental price and other pertinent data are set forth and the customer signs directly below such reference. However,, to believe that the customer has actually read the terms and conditions on the reverse side would be to believe the unbelievable. There is no evidence that such terms and conditions were brought to the customer’s attention when he signed at the car rental counter.
Thus there is a serious question as to whether the terms and conditions on the back of the rental document can be held to be part of the rental agreement. Can Hertz on any theory, contractual or otherwise, limit the responsibility of the owner in mew of the statutory presumption of permissive use created by subdivision 1 of section 388 of the Vehicle and Traffic Law? Since the court finds that the use of the vehicle by Marino was by permission of the lessee, the only pertinent “ term ” or “ condition ’ ’ in the instant case is that forbidding the lessee to allow a person other than an employee to operate the rented truck.
Subdivision 1 of section 388 of the Vehicle and Traffic Law, insofar as it applies to this case, states: “ Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner.”
This statutory provision creates a strong (although rebut-table) presumption that a vehicle is being driven with the permission of the owner (Reyes v. Sternberg, 27 A D 2d 828; Brindley v. Krizsan, 18 A D 2d 971). In the instant case it is clear that the defendant owner gave permission to drive to its lessee who in turn gave permission to Marino. Can the fact that the driver was not technically an employee break the chain of presumptive permission created by the statute ?
*796 First we should consider whether there was in fact any agreement between the owner and lessee embodying the terms and conditions set forth on the back of the contract. Was there the concurrence of intention or mutuality of assent between owner and lessee necessary to bind the lessee to these terms and conditions printed on the back of the rental agreement? (See Egan v. Kollsman Instrument Corp., 21 N Y 2d 160; Lisi v. Alitalia-Linee Aeree Italiane, S.p.A., 370 F. 2d 508, affd. 390 U. S. 455; Willard Van Dyke Prods. v. Eastman Kodak Co., 12 N Y 2d 301; Thompson-Starrett Co. v. Otis Elevator Co., 271 N. Y. 36; Joseph v. Atlantic Basin Iron Works, 132 N. Y. S. 2d 671, affd. 285 App. Div. 1147.)
As indicated above, the text of the terms and conditions virtually defies reading. The small print, coupled with its extent and positioning, reflects a rather artful effort to obscure the attempted limitations on the permissive use granted to its lessee. (See Egan v. Kollsman Instrument Corp., supra, p. 169, for another court’s view of a similarly obscured effort to avoid liability.)
The court finds that there is lacking here the necessary mutuality of assent to make the terms and conditions on the back of the rental document enforceable against the lessee. Thus there is no contractual basis for rebutting the statutory presumption of permissive use. Parenthetically, it is doubtful that any contractual arrangements between the lessor and lessee, even if established so as to give a cause of action to the owner against the lessee for a violation of the agreement, would be binding on third-party members of the public in the light of the statute.
Nor can there be found in this record any basis independent of contract principles to destroy the presumption. The ‘ ‘ terms and conditions ’ ’ printed on the back of the rental agreement cannot be utilized by Hertz to create a unilateral definition of the extent of its permission so as to preclude an action against it by an injured member of the public. We are not dealing here with the case of a vehicle stolen from the lessee or the owner. We have here the case of a vehicle driven by one to whom in fact permission to drive was given by the owner’s lessee. The court’s decision in the Brindley case (18 A D 2d 971, supra) in effect clearly represents a statement of public policy to hold an owner liable under subdivision 1 of sectioin 388 where the vehicle is driven through a chain of consents even though the character of the actual driver involved in the accident (an unlicensed driver in that case) was not anticipated by the owner. This statutory provision reflects an overpowering public interest to give an injured member of the public a right of action against *797 the owner of a vehicle who is primarily responsible for placing it on the highway. It should certainly apply to owners engaged in the car rental business who clearly make no investigation of the capacity or sense of responsibility of the lessee other than the production of a driver’s license or a deposit at the rental counter. The. tremendous growth in the number of cars on the highways, and in the car rental business which greatly adds to the number, requires an application of subdivision 1 of section 388 so as to achieve its intended purpose; namely, to make owners who put vehicles on the highways responsible for accidents caused by negligence in the operation of these vehicles. The legalistic artifices often used to define the scope of permission granted by the owner must yield to the realities of our modern automotive society and the extensive cars rental business which it has developed. The Brindley case (supra) has pointed the way. It is a fair application of the Brindley case to hold that an owner engaged in the car rental business within the context of subdivision 1 of section 388 gives its lessee general control of the vehicle without limitation of authority, and I so find.
The affirmative defense of lack of permissive use pleaded by the defendant Hertz is accordingly dismissed. The trial of the remaining issues of liability and damages shall proceed at Trial Term, Part 8, before the undersigned and a jury on November 23,1970.