In the Matter of the Arbitration between ALLSTATE INSURANCE COMPANY, Respondent, and AGNES LA PERTA, Respondent; HERTZ CORP., Appellant.

Second Department, July 2, 1973.

*Cymrot, Wolin & Simon* (*Benjamin Heller* of counsel), **for** appellant.

*Gerald E. McCloskey* for Allstate Insurance Company, respondent.

No appearance or brief for Agnes La Perta, respondent.

SHAPIRO, J. At Special Term, Allstate Insurance Company, as the petitioner, sought a stay of an arbitration proceeding commenced by Agnes La Perta, a passenger in her husband's automobile when it came in contact with an automobile owned by the appellant, the Hertz Corp. In asking for arbitration she invoked the arbitration provision of the uninsured motorist clause in the automobile liability policy issued by Allstate to her husband.

Hertz had rented its car to one Jean Riquier and at the time of the accident it was being driven by one Louis Tonioli.

The La Pertas first brought suit in the Supreme Court, Orange County, against Hertz and Tonioli. When Hertz interposed its answer it denied liability on the ground that its automobile was not being operated with its permission and consent, since Tonioli was not within the class of persons authorized to operate the vehicle under its rental contract with Riquier. Mrs. La Perta then invoked the arbitration clause in the Allstate policy. Allstate thereupon brought the instant proceeding to stay the arbitration, contending that the La Pertas had failed to establish that Tonioli was uninsured and that, until that was done, it was entitled to a stay of arbitration. Special Term made an order (1) that Allstate bring in Hertz as a party respondent (which was done); (2) that a hearing be held in Special Term of the issue of Tonioli's status as an uninsured motorist; (3) that pending the determination of that issue the arbitration sought by the La Pertas be stayed; and (4) that if Tonioli were found to be uninsured the interim stay of arbitration shall cease.

After the hearing thus directed Special Term made an order permanently staying the arbitration proceeding (*Matter of Allstate Ins. Co. [La Perta]*, 71 Misc 2d 754). It is Hertz's appeal from that order which is now before us for review.

The issue on this appeal therefore is whether the clause on the back of Hertz's automobile rental agreement, which, among other things, limited the use of the rented car to the customer (Jean Riquier), a member of her immediate family, her employer, and her employees in the course of their regular and usual employment by the customer, is effective to release Hertz from liability to a person injured by the negligence of the person

(Tonioli) driving the rented car with the permission of the renter (Riquier) but who is not one of the persons described in the limiting clause.

Hertz contends that, as an owner of a motor vehicle, it could, in its rental thereof, reasonably restrict its operation to certain specified persons and that, if the limitations were breached, it necessarily followed, as a matter of law, that it was not responsible for the automobile's operation, since it was being driven without its, the owner's, permission (*Hinchey* v. *Sellers*, 7 N Y 2d 287; *Arcara* v. *Moresse*, 258 N. Y. 211; *Burmaster* v. *State of New York*, 7 N Y 2d 65, 70).

The above-mentioned provision in Hertz's rental agreement reads: " 2. Under no circumstances shall vehicle be used, operated or driven: (A) for the transportation of persons or property for hire; (B) by any person in violation of law as to age, or by any person who has given to Lessor a fictitious name or false age or address; (C) in any race, speed, test or contest; (D) to propel or tow any vehicle or trailer; or (E) by any person other than Customer, except (1) a member of Customer's immediate family; (2) Customer's employer; (3) an employee of Customer in the course of such employee's regular and usual employment by Customer; PROVIDED that any such person specified in (1), (2) or (3) must have first obtained Customer's permission, and PROVIDED FURTHER that no person, including Customer, shall operate or drive vehicle unless such person is a qualified licensed driver and, if a member of customer's immediate family, is 21 years of age or older. The foregoing restrictions are cumulative, and each of them shall apply to every use, operation or driving of vehicle." Hertz contends that this provision was breached when Riquier, the person to whom it had rented its car, let Tonioli, not a member of her family, her employer or her employee, use it and drive it and that, therefore, it had no liability for the injury caused by Tonioli to the La Pertas while he was driving its car.

Claiming that section 388 of the Vehicle and Traffic Law imposes liability on the owner only for the negligence of a person driving a vehicle with the owner's permission, Hertz argues that any owner, whether a renter or one who lends his car to another, can impose limits on that permission and, if such limits are exceeded, the result is a use without the owner's permission, which absolves the owner of liability for damages resulting from such an unpermitted use.

Nowhere in its brief does the appellant deal with the point stressed by the learned Justice at Special Term, that the driver

limitation contained in the small print on the reverse side of the leasing agreement was not effectual to void the insurance coverage which would otherwise have been applicable to the leased vehicle because it was "included among some 1,500 words of limitation, printed in agate type (14 lines to the inch)" (*Matter of Allstate Ins. Co. [La Perta]*, 71 Misc 2d 754, 755, *supra*). Nor does the appellant deal with the fact that there is a different kind of limiting language on the front page of the rental agreement. That language reads: "NOTICE: Insurance void if vehicle driven by any person other than customer under 21 years of age unless employed by same company as customer on company business." This "notice" appears to be at least twice as large as the type used for the exculpatory language relied on by the appellant and it makes no reference to the much more restrictive language of paragraph 2. Furthermore, its much more noticeable warning is placed immediately under the signature line on the page of the rental agreement on which the terms of the rental, its length, the fee to be paid and the identification of the car and renter appear.

Yet, it is these two factors which, in our opinion, are decisive of the issue of whether the restriction relied on by Hertz was brought home to Riquier, the person renting the car from it, so as to cut off Hertz's liability as the owner of the vehicle.

The condition relied on by Hertz to absolve it from liability, although artfully designated as being on page 1, is really on the back of the rental agreement and is co-joined with a great number of other "terms and conditions" so "compactly printed and in such very small type as almost to defy readability" (*Febbraro* v. *Hertz Corp.*, 64 Misc 2d 794, 795). Under the circumstances, "to believe that the customer has actually read the terms and conditions on the reverse side would be to believe the unbelievable" (*Febbraro* v. *Hertz Corp., supra*, p. 795).[1]

---

1. This is so even though the leasing agreement contains a provision that "I have read the terms & conditions on page 1 (other side) and page 2 of this rental agreement and agree thereto", for as 1 Williston, Contracts (3d ed.), § 90C, pp. 309–310, states: "Many courts qualify the principle stated in the preceding sections ['where an offeree signs a document though in ignorance of its contents, he is bound by its terms' (*ibid.*, § 90A, pp. 291–292)] by adding that if the terms of a document are not fairly legible, the acceptance of it does not involve assent to its terms unless they were actually known. *This qualification is applicable where the terms are printed in too fine type, or in cramped type * * * or where they are printed on the back of the document*" (emphasis supplied).

See, also, *Blossom* v. *Dodd* (43 N. Y. 264, 268) where our Court of Appeals said, "This paper [a baggage check with a small type legend limiting liability for loss of baggage] is subject to the criticism made by Lord ELLENBOROUGH, in

My conclusion in that regard is reinforced by the larger type notice on the page where it was signed on behalf of Jean Riquier, the lessee, which, as above stated, reads: "NOTICE: Insurance void if vehicle driven by any person other than customer under 21 years of age unless employed by same company as customer on company business."

In the absence of any proof that the customer was specifically made aware of the limitations contained in fine print on the reverse side of the rental agreement, she had a right to believe that the only use limitation was the above notice and, since it was inapplicable to her, that there was in fact no other limiting or restrictive driver provision in the rental agreement.

It follows, therefore, that the specific limitation in its rental agreement upon which Hertz relies is without binding effect on its customer. A fortiori, it is without binding effect upon an innocent victim of the negligence of one using the car with the permission of the person to whom Hertz rented it.

The conclusion which I have here reached is consistent with the decision of this court in *Cooperman* v. *Ferrentino* (37 A D 2d 474, 476–477), where we said, "The public policy expressed by the statute frames a remedy unknown at common law for the compensation of a party injured by the negligent driver of an automobile through recourse to the owner (*Continental Auto Lease Corp.* v. *Campbell,* 19 N Y 2d 350, 352; *Rauch* v. *Jones,* 4 N Y 2d 592, 596); and the ownership of the automobile imports a rebuttable presumption of permission (*Leotta* v. *Plessinger,* 8 N Y 2d 449, 461; *Brindley* v. *Kirzsan,* 18 A D 2d 971, affd. 13 N Y 2d 976)." We then went on to say (pp. 477–478) : "Finally, we must treat the circumstances of the case against the background of the statute. Hittner, as an operator of a car rental business, is not in the same position as an individual owner of an automobile who lends it to a relative or friend for a specified purpose or limited to a described area (cf. *Hinchey* v. *Sellers,* 7 N Y 2d 287, 292; *Chaika* v. *Vandenberg,* 252 N. Y. 101; *Psota* v. *Long Is. R. R. Co.,* 246 N. Y. 388). The business of leasing automobiles has assumed a widespread and growing role in our economy. The restrictions laid down by the dealer affect the use of many automobiles, not one; and the restrictions continue

---

*Butler* v. *Heane* (2 Camp., 415), in which he said, that 'it called attention to everything that was attractive, and concealed what was calculated to repel customers;' and added: 'If a common carrier is to be allowed to limit his liability, he must take care that any one who deals with him is fully informed of the limits to which he confines it.'" That statement applies here in full measure.

over the period of the ownership of those automobiles by the dealer in his business, not for the temporary loan by an individual owner to a relative or friend. To the extent that these restrictions render ineffectual the purpose of the statute, the third parties who are injured by the negligence of the lessee are left remediless. We have already made clear in *Barnes* v. *Shul Private Car Serv.* (35 A D 2d 841) that considerations of public policy will prevent the evasion of the statutory liability of a party leasing cars for profit through the attempted device of conditions on use which in truth run counter to the realities and disguise the transaction.''

It is true that in *Cooperman* this court's finding of liability on the part of the car-renting owner was based, in part, on the fact that the owner's rental had been to another company which it knew would rent the automobile from time to time to the public and which it also knew was using a rental contract devoid of the restrictions it had placed in its lessor's rental contract. While holding that '' this kind of casual disregard of written restrictions on the use of an automobile in the practice of the car rental business contemplated '' signified '' that the restrictions were abandoned '' (p. 477), we also based our decision on a finding that the owner's '' consent under section 388 of the Vehicle and Traffic Law was established as a matter of law and that Hittner [the owner] is liable to the plaintiffs as the owner of the automobile which negligently caused the injury '' (p. 478). Though the court added that the condition Hittner, the owner-lessor, sought unsuccessfully to invoke '' might well apply to an individual case '' (p. 478), that statement was made without consideration of the vital issue in the case at bar. That issue is the nature of the notice that an owner engaged in the business of renting cars must give to its customers in order to advise them of the limitation on their right to let other persons drive the cars before the owner can avail itself of the right to rebut the presumption of consent and consequent liability established by section 388 of the Vehicle and Traffic Law.

*Motor Vehicle Acc. Ind. Corp.* v. *Continental Nat. Amer. Group Co.* (42 A D 2d 712) is also distinguishable, because in that case the driver limitation appeared together with the price and period of the rental (matters of real interest to the renter) on the very page and immediately above where the renter signed his name. The limitation in that case was not hidden among numerous other conditions and provisions in small print on the back of the agreement. Contrariwise, it was clearly to be seen by the renter when he signed his name, was in larger print and was specific in its

statement that the lessee "will not surrender the use of the. Rented Automobile to any person without first having obtained the written consent of Discount-Rent-A-Car Corp."

Furthermore, in that case there was absent the "notice" in larger type under the customer's signature, mentioned above, which imposed a limitation substantially different from, and narrower than, that imposed by the fine-type clause on the back of the appellant's rental agreement and by reason of which, as we have noted, the renter had a right to infer that there were no other restrictive driver limitations in the rental agreement.[2]

In view of the above, I do not find it necessary to reach the issue, discussed in the concurring memorandum, of whether any driver-restrictions (except against illegal operators) imposed by a company engaged in the rental of automobiles for hire is per se void as against public policy.

The order appealed from should therefore be affirmed, with $20 costs and disbursements against respondent the Hertz Corp.

BENJAMIN, J. (concurring in the result). The Hertz Corporation leased an automobile owned by it to Jean Riquier. The rental agreement limited the use of the hired automobile to certain purposes, which are not at issue here, and to certain drivers. The provision under consideration provides that under no circumstances is the vehicle to be used, operated or driven by any person other than the customer (the lessee) and "(1) a member of the Customer's immediate family; (2) Customer's employer; [and] (3) an employee of Customer in the course of such employee's regular and usual employment by Customer."

It appears that Riquier permitted one Tonioli to drive the hired vehicle, in violation of the above-quoted portion of the driver restrictions. While Tonioli was driving the hired vehicle a collision occurred with a vehicle owned and operated by Louis La Perta and in which Agnes La Perta was a passenger.

Special Term found that the driver restrictions in the rental agreement, which were contained in the small print on the reverse side of the rental agreement, were not effective "to void the insurance coverage which would otherwise have been applicable

---

2. In the light of the above "notice" just below the signature and address of the customer, is it realistic to believe that a customer would realize that, under the fine-type language of paragraph 2 on the reverse side of his rental agreement, he would be canceling his insurance coverage on the car he was renting if, for example, he allowed his fiancee to spell him as the driver on a trip he took with her in the rented car or allowed any passenger, other than a member of his family, his employer or his employee, to take the wheel and drive the car if he should become tired or otherwise indisposed?

to the leased vehicle ". and for this reason " Tonioli was not an uninsured motorist within the terms of the endorsement of * * * [La Perta's] insurance policy" (*Matter of Allstate Ins. Co. [La Perta]*, 71 Misc 2d 754, 756). Accordingly, Special Term stayed the arbitration proceeding commenced by Agnes La Perta.

I agree that the order appealed from should be affirmed, but solely for the reason set forth in this concurring opinion. In my view the driver restrictions under consideration are void with respect to third parties, as against the public policy of this State, as expressed, in part, by section 388 of the Vehicle and Traffic Law, without regard to the size of the print of the restrictive provisions relied upon by the Hertz Corp.

Section 388 of the Vehicle and Traffic Law provides, in part, that " every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner." There is no dispute that Riquier was entitled to use the rented vehicle. Nor is there any dispute that Tonioli was using the rented vehicle with the permission of Riquier. The issue thus presented is whether the chain of permissive use is broken by the restrictions upon the use of the vehicle contained in the rental agreement.

It is well settled that an owner in lending his car to another person may reasonably restrict the uses to which the car may be put (*Arcara* v. *Moresse,* 258 N. Y. 211, 214; *Burmaster* v. *State of New York,* 7 N Y 2d 65; *Hinchey* v. *Sellers,* 7 N Y 2d 287). The reasonableness of the restriction imposed is largely dependent upon the facts and circumstances of the particular case. One fact of peculiar importance is whether the owner, or one standing in his stead, is in the business of leasing automobiles to the public (*Cooperman* v. *Ferrentino,* 37 A D 2d 474, 477–478). We have squarely held, and for good reason, that " an operator of a car rental business, is not in the same position as an individual owner of an automobile who lends it to a relative or friend for a specified purpose or limited to a described area" (*Cooperman* v. *Ferrentino,* 37 A D 2d 474, 477, *supra*). " Considerations of public policy will prevent the evasion of the statutory liability of a party leasing cars for profit through the attempted device of conditions on use which in truth run counter to the realities and disguise the transaction" (*Cooperman* v. *Ferrentino,* 37 A D 2d 474, 478, *supra*; see, also, *Kalechman* v. *Drew Auto*

*Rental,* 38 A D 2d 974 [concurring opinion of Mr. Justice SHA-PIRO]; *Furletti* v. *Hertz Corp.,* 36 A D 2d 973, 975–976 [dissenting opinion]; *Barnes* v. *Shul Private Car Serv.,* 35 A D 2d 841). As Mr. Justice O'GORMAN wrote at Special Term in the instant case (*Matter of Allstate Ins. Co.* [*La Perta*], 71 Misc 2d 754, 756, *supra*): "In this case we are not dealing with the average owner of a motor vehicle, but we are instead dealing with a large corporation engaged in the business of daily leasing large numbers of motor vehicles which, while abroad on the highways, will necessarily become involved in a proportionate number of accidents. It is this element of size and frequency of leasing, when taken in conjunction with the probable conduct of the large number of drivers who will lease those vehicles, which creates a situation which differs substantially from the isolated transactions engaged in by an individual owner of a motor vehicle."

With these principles in mind, the driver restriction relied upon by Hertz Corp. is clearly unreasonable and, in the context of section 388 of the Vehicle and Traffic Law, therefore void and unenforceable as against innocent third parties.

The rental agreement permits the lessee to grant permission to qualified licensed drivers who are, in addition, either (1) a member of the lessee's immediate family (in which case the member must be 21 years of age or older), (2) the lessee's employer or (3) the lessee's employees employed "in the course of such employee's regular and usual employment." Yet the rental agreement prohibits the lessee from granting permission to nonmembers of the above classes no matter how qualified they may be or under "no circumstances". In each case, however, the driver is equally unknown to the lessor. From the point of view of third persons injured by a driver who is not in any of the enumerated classes, the restrictions are arbitrary and do not reflect the true realities of the situation — a simple automobile rental car used with the lessee's permission. To permit insurance coverage as to innocent third parties to turn on such arbitrary distinctions for so commonplace an activity "defies reality, [and] is a sort of alchemy which to me seems clearly unjust and unreasonable" (*Kalechman* v. *Drew Auto Rental,* 38 A D 2d 974, 975, *supra* [concurring opinion of Mr. Justice SHAPIRO]).

Accordingly, I would hold the driver restrictions at bar per se void on the facts presented by this record. So viewed, Riquier had the authority to permit Tonioli to operate the rental car; and Tonioli was not, for this reason, an uninsured motorist as

that term is understood in an uninsured motorist indorsement on an automobile liability policy.

MUNDER, Acting P. J., LATHAM and CHRIST, JJ., concur with SHAPIRO, J.; BENJAMIN, J., concurs in result, with a separate opinion.

Order of the Supreme Court, Westchester County, dated December 4, 1972, affirmed, with $20 costs and disbursements against respondent the Hertz Corp.