Bessie M. McCLANEY, Individually and as guardian ad litem of Grady M. McClaney, Plaintiffs,

v.

UTILITY EQUIPMENT LEASING CORPORATION, Reuben-Siegried Chauffers, Inc., Gallagher Equipment and Leasing Co., Gallagher Equipment Company, foreign corporations, and Albert J. Molchan, jointly and severally, Defendants.

GALLAGHER EQUIPMENT AND LEASING CO. and Gallagher Equipment Company, Third-Party Plaintiffs,

v.

NIAGARA MOHAWK POWER CORPORATION, Third-Party Defendants.

GALLAGHER EQUIPMENT AND LEASING CO. and Gallagher Equipment Company, Fourth-Party Plaintiffs,

v.

NEW HAMPSHIRE INSURANCE COMPANY, American International Adjustment Company, Inc., Snyder Moore Agencies, Inc., Schumacher Agency and John Lafferty, jointly and severally, Fourth-Party Defendants.

No. 82–CV–79.

United States District Court, N.D. New York.

April 20, 1983.

See also D.C., 560 F.Supp. 1265.

Sanford Rosenblum, Albany, N.Y., for plaintiffs; Eric P. Von Wiegen, Schenectady, N.Y., John K. Powers, Albany, N.Y., of counsel.

Carter, Conboy, Bardwell, Case & Blackmore, Albany, N.Y., for defendant Utility Equipment; Randall J. Ezick, Albany, N.Y., of counsel.

DeGraff, Foy, Conway, Holt-Harris, & Mealey, Albany, N.Y., Dante Renzulli, Personal Counsel, Exton, Pa., for Gallagher Equipment & Leasing and Gallagher Equipment; David F. Kunz, Albany, N.Y., of counsel.

Ainsworth, Sullivan, Tracy & Knauf, Albany, N.Y., for defendant Reuben-Siegfried; John E. Knauf, Albany, N.Y., of counsel.

Joseph Cleary, Gen. Counsel, Lyons, Pentak, Brown & Tobin, Albany, N.Y., for Niagara Mohawk; Kevin P. Glasheen, Albany, N.Y., of counsel.

Bond, Schoeneck & King, Albany, N.Y., for Snyder Moore Agencies, Schumacher Agency and John Lafferty; David Sheridan, Albany, N.Y., of counsel.

Welt, Stockton & Associates, Delmar, N.Y., Hesson, Ford, Sherwood & Whalen, Albany, N.Y., Parisi, De Lorenzo, Gordon, Pasquariello & Weiskoff, Schenectady, N.Y., for defendants New Hampshire Ins. & American Intern.; Michael A. Sims, Delmar, N.Y., Daniel Whalen, Albany, N.Y., Edward D. Falso, Schenectady, N.Y., of counsel.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

The Court has before it a motion by plaintiff McClaney and a motion by defendants Utility Equipment Leasing Corp. ("Utility") and Albert Molchan for partial summary judgment, declaring that defendant Gallagher Equipment Leasing Company ("Gallagher") is an "owner" of a vehicle pursuant to N.Y. Vehicle and Traffic Law §§ 388 and 128. For the reasons below, those motions are denied.

This action arose from an accident which occurred in Albany, New York on December 22, 1981, when a truck driven by Albert J. Molchan struck a Niagara Mohawk Power Corporation ("NiMo") building, causing an explosion within the building which injured the plaintiff. The truck, owned by Utility, had been leased to Gallagher, which in turn had leased it to NiMo. Gallagher retained Reuben-Siegfried Chauffers, Inc., to retrieve the truck from NiMo's premises, and Molchan, an agent or employee of Reuben-Siegfried, was in the process of retrieving the truck when the accident occurred.

With respect to the preliminary choice-of-law question, we note that the plaintiff is a resident of New York and the accident occurred in New York. The courts of this state would apply the New York Vehicle and Traffic Law at least insofar as it bears on issue of vicarious liability. *See, Himes v. Stalker,* 99 Misc.2d 610, 416 N.Y. S.2d 986 (S.Ct., Cattaraugus Cty.1979); *see also, Neumeier v. Kuehner,* 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972); *Babcock v. Jackson,* 12 N.Y.2d 473, 240 N.Y. S.2d 743, 191 N.E.2d 279 (1963); *Restatement (Second) of Conflict of Laws* § 174 (1971). This Court, sitting in diversity, must do the same. *Klaxon v. Stentor Electric Mfr. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

N.Y. Vehicle and Traffic Law § 388 provides as follows:

§ 388. *Negligence in use or operation of vehicle attributable to owner*

1. Every owner of a vehicle used or operated in this state shall be liable and responsible for death or injuries to person or property resulting from negligence in the use or operation of such vehicle, in the business of such owner or otherwise, by any person using or operating the same with permission, express or implied, of such owner. . . .

3. As used in this section, "owner" shall be defined in section one hundred twenty-eight of this chapter and their liability under this section shall be joint and several.

The definition of "owner" in § 128, which is the focal point of these motions, states in its entirety:

§ 128. *Owner*

A person, other than a lien holder, having the property in or title to a vehicle. The term includes a person entitled to the use and possession of a vehicle subject to a security interest in another person and also includes any lessee or bailee of a motor vehicle or motorcycle, having the exclusive use thereof, under a lease or otherwise, for a period greater than thirty days.

It is the movants' contention that there is no genuine issue as to any material fact that would enable Gallagher to avoid being characterized as an "owner" within the meaning of § 128.

The pleadings, depositions, and affidavits before the Court establish the following. Both Gallagher and Utility have been in the business of leasing equipment and vehicles. The two corporations entered into an "Agent Agreement" in January, 1979, whereby Gallagher became an agent of Utility "on a non-exclusive basis" for the purpose of leasing equipment in certain states including New York. The agreement provided that all such leases would be subject to the approval of Utility as to lessee and terms; that Gallagher would be paid on a commission basis; that Gallagher would maintain a place of business for leasing and renting and a facility for servicing equipment in its territory. This agreement was in effect on December 22, 1981, the day of the accident.

Gallagher and Utility also entered into a lease, entitled "Rental Agreement No.

6205" and dated May 7, 1981, whereby Utility leased to Gallagher a Zeligson Hi-Ranger truck. It was the clear understanding of the parties that the vehicle was to be re-leased by Gallagher, and the Rental agreement expressly provided for vehicle use by NiMo. Among the many "Additional Terms" set forth on the reverse side of the lease were:

1. ... LESSEE shall return said vehicle to LESSOR at LESSOR's place of business or its representatives, without notice or demand therefore, upon termination of this rental period, whether by expiration thereof or otherwise ....

5. This agreement provides for the exclusive possession, control, and use of the vehicle and equipment by the LESSEE for the duration of the rental.

The agreement also provides that it is to be governed by and construed in accordance with the laws of the State of Wisconsin.

The vehicle was re-leased by Gallagher to NiMo under an agreement which provided for commencement of the lease term on May 8, 1981 and termination of the lease term in April, 1982. However, on December 1, 1981, NiMo contacted Gallagher, informing it that the truck was off rent, and instructing Gallagher to have the truck removed from NiMo's premises. Gallagher, in turn, informed Utility that the truck was off rent as of December 1. An employee of Utility then made a notation in the Utility-Gallagher Rental agreement that the Termination Date of that agreement was "12–1–81". Gallagher did not charge NiMo for rental of the vehicle after December 1. Nor did Utility charge Gallagher any rent for the vehicle after December 1, 1981.

On December 1 or the next day, Gallagher engaged Reuben-Siegfried Chauffers, Inc. to retrieve the truck from NiMo premises. The truck was to be transported to Pennsylvania, where Gallagher is located. On December 22, however, the accident occurred, and this lawsuit subsequently ensued.

*Discussion*

Movant McClaney notes that there are three categories of ownership set forth in the definitional section, § 128, and he con-tends that Gallagher would qualify as an owner under each of them. However, ordinary rules of statutory construction indicate the inapplicability of the first two categories of ownership to the facts of this case.

■ The first category of ownership is the general definition, "a person, other than a lien holder, having the property in or title to a vehicle." McClaney argues that this broad category includes Gallagher, which has a right to use the vehicle by virtue of the various written agreements to which Gallagher was or had been a party. Had this statutory phrase appeared alone, the Court would indeed need to address the question of whether Gallagher had "property in or title to a vehicle" due to the leases. However, the statute goes on to specify that "the term ("owner") includes ... any lessee or bailee of a motor vehicle ... having the exclusive use thereof, under a lease or otherwise, for a period greater than thirty days." Thus the state legislature contemplated the question of whether a person who is a lessee or bailee by virtue of a lease or otherwise is an "owner", and it established two conditions under which they would be so characterized: there must be exclusive use, and it must be for over thirty days. The legislature could not have intended that a lessee or bailee with non-exclusive use, under an agreement lasting less than thirty days, was still to be deemed an "owner" under the first, more general clause. This principle of statutory construction, a derivative of the doctrine of *noscitur a sociis* ("It is known from its associates," Black's Law Dictionary 1968 ed.), may be stated as follows:

Words of general and specific import take color from each other when associated together, and thus a word of general significance is modified by its associates of restricted sense. When used in connection with particular words or recitals, general and unlimited terms in statutes are qualified, or restrained and limited, by them, or by other provisions appearing in the act. So the meaning of words of general import in a statute is limited by words of restricted import immediately following and relating to the same subject.

82 *C.J.S.* Statutes § 332 at 657–8. Reading § 128 as a whole, then, it is clear to the Court that the phrase "property in or title to a vehicle," when applied to one whose interest is based on a lease or other agreement, is limited by the more restrictive final phrase of the statute.

■ McClaney next contends that Gallagher is "a person entitled to the use and possession of a vehicle subject to a security interest in another person," within the meaning of § 128. It is beyond dispute that Gallagher was "a person entitled to the use and possession of the vehicle" at the time of the accident, and plaintiff would have the Court extract those words from their statutory context in order to deem Gallagher an "owner". However the meaning of the phrase, regarded in its entirety, could not be more clear: in situations where a vehicle is sold under a contract which reserves a security interest in the vendor, it is the vendee who is nevertheless the owner. The phrase is meant to complement a related sentence in § 388 which provides that, under those circumstances, the secured vendor would not be an owner with vicarious liability. *See, Buehler v. Bogino,* 39 Misc.2d 1074, 242 N.Y.S.2d 528 (1963).

Plaintiff's reading of the phrase is illogical; it would extend ownership status to anyone using the vehicle with permission, presumably including any driver. Its construction is inconsistent with the more limited phrases that both precede and follow it, and with the clear intent and purpose of the legislature.

Thus, if the movants are to prevail on their· motion, they must establish that at the time of the accident, Gallagher was "a lessee or bailee of a motor vehicle . . . , having exclusive use thereof, under a lease or otherwise, for a period greater than thirty days." In their attempt to so characterize Gallagher, the movants contend that the Utility-Gallagher Rental Agreement was in effect on December 22, and that under ¶ 5 of that Agreement, Gallagher had exclusive use of the vehicle. However, the Court finds that movants have failed to meet their burden of showing that there is no genuine issue as to any material fact. The record reveals material factual disputes with respect to whether the Agreement was extant on December 22, and if so, whether the exclusivity clause was extant.

■ The Court agrees with Gallagher that the Agent Agreement, the Utility-Gallagher Rental Agreement, and the Gallagher-NiMo Lease must be viewed collectively in order to ascertain the understanding of the parties thereto. With respect to the question of termination date, a reference to ¶ 1 of the Utility-Gallagher Rental Agreement would indeed support a finding that the Agreement did not terminate until Gallagher had returned the vehicle to Utility in Wisconsin. However, that boilerplate language must be read in light of the simultaneous agency relationship between the parties, which contemplated that Gallagher could, upon the termination of its lease from Utility for the use of one third party, endeavor to re-rent the vehicle to another third party.

Moreover, there is evidence in the record that Utility had modified other terms in the Rental Agreement pursuant to a course of dealing between the parties (relating to rental charges). This, coupled with the fact that Utility itself had noted the date of termination as "12–1–81" on its copy of the Agreement, that Utility had ceased to charge Gallagher for rental under the Agreement as of December 1, and that Utility credited Gallagher with early return of the vehicle as of December 1 creates a triable issue of fact as to whether it was the intent of the parties to consider the Rental Agreement terminated on December 1.

. Utility has argued that, under Wisconsin law, where a bailee has failed to return property to the bailor at the end of the agreement term the bailor has the right to consider the bailment as continued or renewed. *Umentum v. Arendt,* 267 Wis. 373, 66 N.W.2d 192 (1954). The Court has serious reservations about applying Wisconsin law to this issue,[1] and about applying the

---

1. The relevant issue before the Court is whether Gallagher is a "lessee" or "bailee" within the meaning of N.Y. Vehicle and Traffic Law § 128. While it is true that a New York Court

*Umentum* doctrine in particular.[2] But even if we were to set aside those reservations and invoke the *Umentum* doctrine, it would still not be dispositive of the question of whether the lease was in effect on December 22. The *Umentum* doctrine requires the bailee to redeliver the property at the end of the bailment term or face extension of the bailment, unless the parties have agreed otherwise. As stated above, there is an Agent Agreement and a course of dealing between Utility and Gallagher which creates a question of fact as to whether Utility waived redelivery of the vehicle, and thereby lost its option to treat the lease as still effective. Indeed, in the *Umentum* case itself the court found that, the general rule notwithstanding, it was for the jury to decide whether the parties reached an understanding that the bailee did not have an obligation to redeliver; that the bailor had assumed that obligation. Thus, the mere invocation of the *Umentum* doctrine does not establish the continuation of the Utility-Gallagher Rental Agreement.

There is yet another material issue of fact which would be present regardless of whether the Rental Agreement was found to be in existence *vel non:* whether Gallagher had *exclusive* use of the vehicle during the crucial period. In addition to relying upon ¶ 5 of the Rental Agreement, which of course would be irrelevant if the Rental Agreement were no longer in effect, the movants have directed the Court's attention to several excerpts from depositions which tend to show an understanding that, from December 1 onward, Gallagher had

would have to refer to the Rental Agreement to determine whether it was in effect on the crucial day, it does not necessarily follow that the Court would abide by a choice of law provision in that contract and then apply a Wisconsin common law doctrine, not to construe the contract, but to imply an extension of its termination date.

At the moment we are construing a New York law, not a Wisconsin lease. When New York legislators employed the terms "lessee" and "bailee" it is quite likely that they meant the terms to be applied in accordance with New York concepts, regardless of any provisions to the contrary in the lease or bailment agreement. *C.f., Febbraro v. Hertz Corp.,* 64 Misc.2d 794, 315 N.Y.S.2d 702, 705 ("The 'terms and conditions' printed on the back of the rental agreement cannot be utilized by Hertz to create a unilateral definition of the extent of its permission" to avoid liability for use with "permission" under N.Y. Vehicle and Traffic Law § 388(1)).

Indeed, in a discussion of vicarious liability statutes in the *First Restatement of Conflict of Laws* (1934), the examples used illustrate that the law of the place of the wrong (in this case, New York) not only dictates the vicarious liability standard, but also decides what is meant by "independent contractor" or "servant" or "scope of employment" for the purpose of applying the vicarious liability statute. § 387 Illustrations 1, 2, and 3. Thus in the classic New York choice-of-laws case, *Scheer v. Rockne Motor Corp.,* 68 F.2d 942 (2d Cir.1934) (L. Hand, C.J.), the New York Court of Appeals decided first to apply the vicarious liability statute of Ontario to an accident that occurred there, then further decided to apply the Ontario case-law concept of "consent", which was considerably broader than the New York concept.

There are of course occasions in which a term in one state's vicarious liability statute would of necessity require an examination into another state's laws. The question of whether a purported owner had title would be such an occasion. *Ritter v. Derrow Motors Sales, Inc.,* 2 Mich.App. 116, 138 N.W.2d 489 (1965). We are not convinced, however that the question of whether a failure to return a vehicle creates a bailment is the type of issue that requires a reference to another state's law.

As is often the case, however, this question has not been squarely addressed by the parties: both the movants and opponent have assumed the application of Wisconsin law to this issue. Because the court has determined that the application of Wisconsin law does not eliminate the material factual disputes in this case in any event, it would be superfluous to require rebriefing on this point. Thus we relegate our concerns on the choice-of-law question to this footnote, and proceed to analyze the motion on other grounds.

2. There is a weighty policy reason for not applying the Wisconsin *Umentum* doctrine in the context of this vicarious liability case. Under *Umentum,* the bailor has the *option* of treating the bailee who has failed to return the property as bound by a continued or renewed bailment. This enables the lessor of a vehicle to unilaterally decide whether the tardy lessee should share or escape vicarious liability to the plaintiff under N.Y. Vehicle and Traffic Law § 388. Obviously, the New York legislature could not have intended that one defendant's tort liability be at the option of a co-defendant. The *Umentum* rule, fashioned with a bailor's need for continued rent in mind, simply does not make sense as applied in the vicarious tort liability context.

exclusive use of the vehicle. For example, Beatrice Yorczyk, a representative of Gallagher, testified as follows:

Q. What arrangements existed between Gallagher Equipment Leasing Company Inc. and the Utility Leasing Company pertaining to its truck during the period from December 2nd through December 22nd, 1981?

A. In what respect?

Q. All right. In terms of who would have the use of the truck who was it expected that would have the use of the truck during that period of time?

A. Only Gallagher Equipment Leasing.

*Yorczyk deposition*, 6/23/82, p16 lines 12–20.

Gallagher, however, can point to testimony that evidences an understanding that, after December 1, 1981, either Utility or Gallagher had the right to re-rent the vehicle. For example, Thomas Maloney, corporate Treasurer for Utility, testified as follows:

Q. And between December 1, 1981 and December 22, 1981, who would have been responsible to try to find someone else to rent it? Do you do that, or does Gallagher do that?

*Mr. Kunz:* I object to form.

A. Either or both.

. . . .

Q. At any time after December 1, 1981, did Utility Equipment Leasing Corporation have the right to lease this equipment to any other party that wanted it?

*Mr. Mills:* Object to the form of the question. You may answer.

A. I believe so.

Gallagher strongly urges the Court to look at the overall understanding of the parties; to consider the Agent Agreement, the Rental Agreement, and the Gallagher-NiMo lease collectively to ascertain the understanding of the parties as to the right to use the vehicle during this period. After doing so, the Court agrees that there is a material issue of fact in dispute with respect to the parties understanding as to the use of the vehicle. Indeed, there is a strong suggestion in the record that Gallagher may not have had exclusive use of the vehicle even *before* December 1. It is true that the

Rental Agreement provided in boilerplate language on its back that the lessee, Gallagher, was to have exclusive use of the vehicle. However that same agreement, in original language on its face, provided that the vehicle was for use by NiMo. In view of the contemporaneous Agent Agreement which contemplated re-rentals by Utility or by Gallagher subject to the approval of Utility, it is hardly an undisputed issue of fact that Gallagher had exclusive right to use the vehicle.

At its core, this is a relatively straightforward tort liability case. However, it is made complicated by the multitude of defendants and the complex, interrelated nature of their contractual and non-contractual relations. As desirable as it would be for the Court to eliminate collateral issues prior to trial, the issues raised by this motion are simply not good candidates for summary disposition. As the Second Circuit recently stated in *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438 (2nd Cir.1980):

Fed.R.Civ.P. 56(c) provides that summary judgment is appropriate only when a review of the entire record demonstrates "that there is no genuine issue of material fact." The burden, therefore, is on the moving party to establish that no relevant facts are in dispute . . . Indeed, the court "must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought." . . . Thus, when the party against whom summary judgment is sought comes forth with affidavits or other material obtained through discovery that generates uncertainty as to the true state of any material fact, the procedural weapon of summary judgment is inappropriate. Indeed, it is the very purpose of the trial to establish which party's version of the contested circumstances best comports with reality.

Gallagher has come forward with material that generates uncertainty as to the contractual relationship between Gallagher and Utility with respect to the vehicle. Summary judgment is therefore DENIED.

So Ordered.