OPINION OF THE COURT
Edward J. Greenfield, J.
On April 29, 1981, a little after 5:00 p.m., Mrs. Elaine Kaduson, driving a Cutlass sedan, exited a parking lot on 17th Street in Manhattan, lurched forward, and allegedly unable to control the car, turned the wrong way on 17th Street, turned north into the face of southbound traffic on Seventh Avenue, dodged oncoming cars, and went up on to the sidewalk at 18th Street. She continued at high speed until the car was stopped by collision with a pole at 20th Street. As she careened up the sidewalks, she struck two pedestrians, one of whom died on the spot, and one who lingered on the edges of life until 17 days later.
Actions brought by the estates of the two men killed were consolidated and brought on for joint trial. The Pigman case, involving the pedestrian who met instant death, was settled during the trial, but the case involving Robert Michael Coffman, who later died in the hospital, was pursued by his mother, Marcetta Giardina, as administratrix and next of kin to a jury verdict in favor of the plaintiff. The jury awarded her a total of $725,000 — $500,000 for conscious pain and suffering of her largely unconscious son, and $225,000 for her pecuniary loss as a result of his death. The court granted a motion to reduce the amount of the verdict for conscious pain and suffering to $275,000, and plaintiff stipulated to accept the reduced amount.
Six parties had been named as defendants in the Giardina case — Avis Rent A Car, Inc., the registered owner of the vehicle; S.G.D. Corporation, which leased it from Avis; New York Magazine, to which S.G.D. Corporation made the car available; and Jack Kaduson, the New York Magazine employee who used the car essentially (but not exclusively) for company business; Elaine Kaduson, his wife, who was using the car on the fateful day for personal business; and General Motors Corporation, the manufacturer of the car. During the trial, the court dismissed the claims against General Motors for defective manufacture, and Avis for defective maintenance, there being no credible evidence to support such *1054 claims. The court also dismissed the claims against Jack Kaduson for vicarious liability, since he was an employee of New York Magazine permitted to use the vehicle and covered by New York Magazine’s liability policy. The court agreed to pass on the viability of the claims against S.G.D. Corp. and New York Magazine at the conclusion of the case, and both those defendants have now moved to be excluded from liability.
Section 388 of the Vehicle and Traffic Law, which establishes liability by the owner of a car irrespective of the owner’s fault if a permitted driver’s negligence is responsible for injury or death, was designed to protect injured parties from uncompensated injuries, and to encourage owners to allow their vehicles to be used only by competent and responsible drivers. (Plath v Justus, 28 NY2d 16; Rauch v Jones, 4 NY2d 592; White v Smith, 398 F Supp 130.) It is not designed to bring the maximum number of possible defendants having anything to do with the vehicle in under its net, but to assure that the owner (and his liability policy) will be available to help supplement and satisfy any judgment rendered against the feckless driver.
Avis Rent A Car Corporation clearly was the purchaser and registered owner of the death dealing vehicle. The question is whether S.G.D. Corporation and New York Magazine, as lessee and bailee, also come within the statutory definition of "owner”. Under section 388 (3), the term "owner” is defined as set forth in the statutory definitions under section 128 of the Vehicle and Traffic Law. The owner is a "person, other than a lien holder, having the property in or title to a vehicle”. To ensure that true ownership is not obscured by titles, liens, chattel mortgages, or other security interests, the statute declares that the term "includes a person entitled to the use and possession of a vehicle * * * subject to a security interest in another person”. Since that definition might be broad enough to include transient and short-term users, the statute goes on to specify that a lessee or a bailee is to be considered an "owner” only if entitled to exclusive use of the vehicle "under a lease or otherwise” for a period greater than 30 days.
The question then is whether S.G.D. Corporation and New York Magazine, as well as Avis, come within the statutory definition of an "owner”. The evidence in the case reveals that the S.G.D. Corporation is a bartering organization which *1055 arranged for the use of the Avis vehicle in exchange for obtaining advertising space for New York Magazine pursuant to a New York Zone trade agreement (not in evidence). While the Avis form lease for the vehicle in question sets forth S.G.D. as the party which will pay for the car rental (through credits earned in exchange for advertising placed), it also notes the name of J. Kaduson under "Remarks”. The name of New York Magazine itself nowhere appears. It is clear that S.G.D. Corporation, while nominally the lessee, never had exclusive use of the vehicle, or indeed any actual use or possession of it at any time. It arranged for the vehicle’s availability, but it was picked up directly from Avis by Jack Kaduson, New York Magazine’s employee. Further, the testimony by S.G.D.’s president was that the bartering agreement had terminated prior to the date of the accident and that he had no knowledge of the specific lease agreement in effect at the time of the accident. Mr. Kaduson was in continuous possession of the vehicle, and all expenses incurred in its operation, such as gas, parking, and routine maintenance were paid for by New York Magazine. S.G.D., while named by Avis as the lessee, was not an actual party to the lease, did not sign the lease agreement, had no possession, use or control of the car, and was merely the initiator and go-between in the transaction. I hold that under these circumstances it cannot be deemed an "owner” of the motor vehicle within the intendment of the vicarious liability statute. Since the statute is in derogation of the common law, it must be strictly construed, and not read to subject totally noninvolved parties to substantial liability unless clearly required by the statutory scheme. (Caldararo v Au, 570 F Supp 39; Sikora v Keillor, 17 AD2d 6, affd 13 NY2d 610; Hanley v Albano, 20 AD2d 644.)
The motion by New York Magazine to dismiss is also granted, but on somewhat different grounds. The lease in evidence on an Avis form nowhere identifies New York Magazine as the lessee. Since it obtained consensual possession of the vehicle in exchange for advertising space, and made it available to its employee, could it not be said to be a lessee or bailee "under a lease or otherwise”? I suppose it could. "Or otherwise” in this context clearly refers to any contract, letter, writing, or arrangement other than a formal lease which would give a party other than the registered owner possessory rights in a vehicle. Since New York Magazine was not denominated a party to the Avis lease, but was permitted (and intended) to have exclusive use of the car, it was a bailee. *1056 The question is whether it was entitled to exclusive use of the vehicle "for a period greater than thirty days”.
The lease in evidence, which covered the period including the accident, is headed: "Avis Rent A Car. Rent by the Month”. In the box for agreed return location appear the typed words "Summer Monthly NY”. Date and time when rented is given as "05Apr81” at 0946, and date and time of return is given as "05May81” at 0947. The box for "Time Car was Used” is typed as "30 DY 0 HR”. The rate set forth (diminishing the credits earned) is given as the normal monthly price.
Under these circumstances, it is plain that New York Magazine was designated the bailee by S.G.D. Corporation under one of a series of successive 30-day leases. It is true that the magazine, and its employee Jack Kaduson, may have had the use of the car over a total time span of 10 or 12 months, but as Avis itself puts it, it was under "a series of leases churned out on a monthly basis by Avis Corporation”. The lease in effect created a month-to-month relationship, which either party could have terminated at the end of the designated period. The fact that it may have been recurrent and renewed many times over does not change the essential nature of the relationship when it was entered into. The duration of a lease specified to be for a 30-day period is not altered by the retrospective adding together of successive prior monthly tenancies. Since the car could have been returned or recalled at the end of any given 30-day period, there was no possessory right "under a lease or otherwise” for more than 30 days, and hence no "ownership” as statutorily defined. (Cf., McClaney v Utility Equip. Leasing Corp., 560 F Supp 1270.)
The statute has recognized that the right to return or recall the car at the end of any'30-day period will exempt the short-term lessee or bailee from ownership responsibilities. In the car rental business, there is a sharp distinction between long-term and short-term leasing. The long-term lessee, who may rent for up to 3 or 4 years, is in effect an owner who is paying monthly installments and receiving maintenance and certain tax benefits. At the end of the designated period he is frequently given the option of acquiring the car outright for its depreciated value. That is the kind of "lessee” the statute intends to treat as a true owner. The short-term lessee is accorded a briefer period of possession, and even if the short-term lease is periodically renewable, there is little reason, in logic or policy, to saddle him with ownership responsibilities.
*1057 Given the requirement that the statute, in derogation of the common law, must be construed strictly, it follows that in this case the vehicle in question had but one owner who bears vicarious responsibility, and that is Avis. It gets no additional partners to share that responsibility. Hence, the motions by defendants New York Magazine and S.G.D. Corporation for judgment dismissing the complaint against each of them are granted.